## SUPREME COURT.

THE PEOPLE *ex rel.* JOHN CROUSE and others agt. GEORGE W.
COWLES, County Judge of Wayne County.

An *attachment* isssued under the Revised Statutes entitled "of proceedings for con-
tempts to enforce civil remedies," is a mere substitute for an *execution against the
body.* It is equivalent to a *capias ad satisfaciendum.*

It is an execution in a *civil action,* upon which the defendant would be entitled to the
*jail liberties,* under section 40 of article 3, chapter 8, part 2 of the Revised Statutes,
page 433.

Such an attachment is a mere *civil process* to-enforce the payment of money; and is
regular process for that purpose. But *it seems* that a *female* cannot be arrested or
imprisoned on such process. (*Code,* § 179.)

*Monroe General Term, December,* 1867.

*Present,* WELLES, J. C. SMITH *and* E. D. SMITH, *Justices.*

CERTIORARI upon proceedings upon *habeas corpus.*

October 15, 1866, John Crouse and others recovered a
judgment in this court against one Marinda Wheeler, a mar-
ried woman, for $723.24. The venue was laid in Onondaga
county. A transcript was duly docketed in Wayne county,
where the said Marinda resided, and an execution issued to
that county and returned *nulla bona.*

The defendant was examined before a referee, upon an
order made by Judge MORGAN, and it was found that she had
some $900 in cash in her possession.

Upon the report of the referee, Judge MORGAN, December
18, 1866, upon notice to said Marinda, made an order that
she pay the said judgment and $40 costs of the proceedings,
within ten days, or that in default thereof an attachment
issue against her. It appeared by such report that said
Marinda was a married woman. She appealed from this
order to the general term, where the order was affirmed.

The order was duly served upon the said Marinda, and
upon her refusal to comply therewith, an attachment, after
being allowed by the court, was issued against her, as for
contempt, and she was arrested and conveyed to the common

jail of the county. The county judge granted a *habeas cor-pus*, directed to the sheriff, and upon the return showing these facts, and upon the admissions of the parties, decided that said Marinda was entitled to the liberties of the jail, upon issuing the proper bond, and ordered her discharge from close custody upon executing such bond.

This *certiorari* is issued to review that order, the plaintiffs in the judgment claiming that said Marinda is not entitled to the jail liberties, and that Judge Cowles had no jurisdiction to discharge her from close custody.

PRATT & MITCHELL, *for relators.*

1. The justice and legality of the order directing the payment of the judgment could not be inquired into before the county judge, and is not open for discussion here.

1. Those matters were properly before the judge who granted the order, and having been decided by him, cannot be inquired into collaterally. The only remedy is by appeal. (32 *How.* 309; 7 *Hill*, 301; 7 *How. U. S.* 21.)

2. The party did appeal to the general term, and the order, upon solemn argument, was affirmed.

3. These decisions dispose of all objections to the jurisdiction of the judge to hear and determine the matter, and all other objections to the order.

4. It disposes of all questions in regard to the validity of the order, whether the the points or objections were taken or not.

II. A married woman, like any other person, is liable to punishment, as for a contempt, for disobeying an order of the court.

1. She may be attached for disobeying a subpœna, for refusing to testify, or for disobeying any other valid order of the court or judge.

2. To hold that she cannot be imprisoned for refusing to obey an order to pay money or apply other property in discharge of judgments against her, would enable her in all cases, by converting her tangible property into cash or choses in action, to put her creditors at defiance.

3. The provision of the statute, that no female shall be imprisoned on any process in any civil action founded upon contract, does not apply to process as for contempt.

(*a.*) The process of attachment for contempt is not deemed process in a civil action; it is in the nature of original process to punish for disobeying the orders of the court.

(*b.*) When the disobedience affects the interest of parties, the court may use its power to punish to recompense the party for the injury sustained. (2 *R. S.* 534, 535; *People* agt. *Nevins*, 1 *Hill*, 155.)

(*c*) It is not process in an action upon contract; it is process to punish for disobeying a valid order.

III. The defendant in the process was not entitled to the jail liberties.

1. The commitment in this case was for disobeying the order of Judge MORGAN, directing her to pay the judgment and interest, with the costs of the proceedings.

2. The statute prescribes that all persons committed to any jail, upon process for contempt, except on attachments for the non-payment of costs, shall be actually con-

People *ex rel.* Crouse agt. Cowles.

fined and detained within such jail until they shall be discharged by due course of law, and are not entitled to the jail liberties. (2 *R. S.* 433, § 40; *Id.* 437, § 61.)

3. This clearly was not a commitment for non-payment of costs, and therefore the prisoner was not entitled to the jail liberties. (1 *Code R.* 98; 4 *Paige,* 282.)

(*a.*) In the case in 4 *Paige,* the commitment did not show that the money to be paid was not for costs, and hence the chancellor refused to attach the sheriff for allowing the prisoner the liberties of the jail.

(*b.*) The chancellor, in his opinion, assumes that when the precept is for the payment of costs *or other sums of money,* the prisoner is entitled to the jail liberties; but it is manifest that the attention of the chancellor was not directed to the language of the statute.

IV. The statute made it the duty of the county judge, upon the return of the sheriff, forthwith to remand the prisoner, and his order, therefore, was without jurisdiction.

1. The statute directs him to forthwith remand the prisoner, if it shall appear that he is detained in custody for any contempt specially and plainly charged in the commitment, by some court or officer having jurisdiction to commit for such contempt. (2 *R. S.* 567, § 400.)

2. The contempt in this case was specially and plainly charged in the commitment.

(*a.*) The order made by Judge MORGAN was set out in the commitment, directing the payment of the judgment.

(*b.*) The validity of that order, as has been shown, cannot be questioned collaterally.

(*c.*) The commitment shows that the prisoner refused to comply with and obey the order, which refusal was plainly a contempt, for which the court had authority to commit- (2 *R. S.* 535: 20 *How.* 454; 22 *Id.* 309; 13 *Abb. Pr.* 459; 10 *Barb.* 523; 1 *Kernan,* 324; *S. C.* 1 *Hill,* 165; 24 *N. Y.* 74; *Brush* agt. *Lee, Court of Appeals, decided June* 7, 1867.)

3. An irregularity in issuing the attachment cannot be inquired into upon *habeas corpus.* The remedy is by motion to set aside the attachment.

4. The process need not recite all the proceedings giving jurisdiction. (11 *N. Y. R.* 324.)

V. The order of the county judge should therefore be reversed, and the prisoner remanded to the custody of the sheriff.

## LYONS & NORTON *for respondent.*

I. This case is to be heard upon the return to the *certiorari,* with the same rights to the relator as though the application had been originally made to this court; *i. e.,* should this court determine that the relator was entitled to her discharge before his honor Judge COWLES, she is now entitled to her discharge at the hands of this court.

II. Where the commitment is for an alleged contempt for not obeying an order, it may, on *habeas corpus,* be examined and determined whether the prisoner is properly committed and held by authority of law, unless in a bailable case, where bail is offered and receivable. (*People* agt. *Nevins,* 1 *Hill,* 171.)

(*a.*) When the return to a writ of *habeas corpus* shows a detainer under legal process, the only proper points for examination are the existence, validity and present legal force of the process. (*People* agt. *Kelly,* 1 *Abb. N. S.* 435.)

(*b.*) In *The People* agt. *McLeod,* Justice COWEN says, 2d Revised Statutes, 469, 2d edition, sections 40, 41 (§§ 55, 46, *of vol.* 3, *5th ed. R. S. p.* 887), requires us to examine the facts contained in the return, and into the cause of the confinement of the prisoner, and if no legal cause be shown for it, or for its continuance, we are to discharge him.

People *ex rel.* Crouse agt. Cowles.

(*c.*) The relief granted upon *habeas corpus*, against defective convictions and commitments, is in some respects analogous to the relief obtained upon a writ of error. It is in one respect more desirable, because it is more prompt in relieving the prisoner from imprisonment; but on the other hand, it leaves the order or judgment in force (4 *John. R.* 360; *In the matter of Miller,* 1 *Daly,* 575; *S. C.* 19 *Abb.* 394; *Hurd on Hab. Cor.* 270.)

III. The authority and power of the county judge to examine and discharge is, within his county, as great and co-extensive as those of the supreme court in term; and this, too, although there is a term of the supreme court in session in this county at the time of the hearing. (3 *Hill,* 652, *note* 5; *Matter of Miller,* 1 *Daly,* 562; *S. C. sub. nom. case of twelve commitments,* 19 *Abb.* 394.)

IV. The facts set forth in the return, being admitted, or not denied, the law of the case alone is to be inquired into, and the proceeding is the same as if the return were formally demurred to. (3 *Hill,* 658, *note* 28.)

(*a.*) The party brought up may deny any of the material facts set forth in the return, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge; which allegations or denials shall be on oath; and thereupon the court shall proceed in a summary manner to hear, &c. (3 *Hill,* 658, *note* 29.)

(*b.*)When the return shows that the prisoner is legally detained on civil process, he may show by affidavit that he is privileged from arrest. (*Hurd on Hab. Cor.* 270.)

V. The facts in this case show that this was an action founded on contract.

Proceedings supplementary to execution are proceedings in the original action. (*See* 24 *How.* 137; 26 *Id.* 59; 15 *Id.* 19, 412; 19 *Id.* 560; 15 *Abb.* 307.)

VII. The relator is and was a married woman. (*See Return, p.* 21.)

1. The relator being a female, is not liable to arrest and imprisonment upon any process in any civil action founded upon contract. (*See R. S. 5th ed., p.* 725, § 9.)

2. The statute above referred to is in full force and not repealed.

(*a.*) The right of a party cannot be done away with by judicial construction. It must be by legislative enactment. (*See* 42 *Barb.,* 435, 440.)

(It is claimed that the process upon which the relator is committed is not process in a civil action.)

(*a.*) The order in question is in effect an execution to compel the relator, by means of an imprisonment of her person, to pay the debt and costs of the plaintiffs (Crouse and others). (*See People* agt. *Bennett,* 4 *Paige,* 282; 10 *How.,* 564; 4 *Hill,* 577, 578.)

(*b.*) It is process within the meaning of section 9, of page 725, of volume 3, of 5th edition of Revisd Statutes, which is in these words:

"No female shall be imprisoned on any process in any civil action founded on contract."

"*Blackstone,* in writing of contempt, volume 4, pages 284, 285, says:

"Those committed by parties to any suit or proceeding before the court, as diso-"bedience to any rule or order, and in the progress of a cause, by non-payment of "costs awarded by the court upon a motion or the non-observance of awards duly "made by arbitrators or umpires, after having entered into a rule for submitting to "such arbitration. *Indeed the attachment for most of this species of contempt, and* "*especially for non-payment of costs, and non-performance of awards, is to be looked* "*upon rather as a civil execution for the benefit of the injured party,* though carried on "in the shape of a criminal process for contempt of the authority of the court—and "therefore it hath been held that such contempt and the processes thereon, being "properly the civil remedy of individuals for a private injury are not released or "affected by a general act of pardon."

VIII. Individuals can only be deprived of liberty *by some process of law.*

(*a.*) *There is no law* that authorizes or warrants the arrest of a female, except it be,

1. For the commission of a crime ; or,

2. For the willful injury to personal character or property (under sub. 5 of § 179 of Code).

(*b.*) The right to arrest the relator (if any exists) upon such process, is only derived by implication from the general law.

(*c.*) But the right of one person to deprive another of his or her liberty, is never derived by implication. It must be by some positive law.

IX. This is not a contempt. It is simply a proceeding as for a contempt to enforce a civil remedy to protect the rights of parties in civil actions. (*See act vol.* 3 *R. S.*, *5th ed.*, *p.* 849 ; *vol.* 3, *R. S.*, *5th ed.*, *ps.* 467 to 470, §§    .)

(*a.*) This is not a proceeding by the court to vindicate its power and dignity. If it were, the court would punish criminally.

(*b.*) The court cannot punish criminally in such cases. It being a proceeding in the nature of a civil execution to collect a judgment for the party.

(*c.*) But if it were a case in which the court could punish criminally, then we say it has not been done, and without which the relator could not lawfully be arrested.

(*d.*) The precept does not show any adjudication, in terms, that the relator was guilty of, or had committed a contempt, but omit any adjudication or recital of an adjudication that the relator had committed a contempt, and goes on to set out the various steps or proceedings, and orders in the proceedings, against ·the relator, to compel her to pay over the money, and that she had not done so. The contempt is not charged in terms, but recitals are set forth, from which it is to be inferred or deduced, that she was or is guilty of a contempt. (*See Return, ps.* 15, 16.)

(*e.*) The order convicting of a contempt in a proceeding to enforce a civil remedy, should recite the substance of the alleged misconduct. *The adjudication of the court that the accused is guilty,* and that such misconduct was calculated to, and did impair, defeat, impede and prejudice the rights, &c., of the parties, and should direct the payment of a fine, stating its several items, &c. (*See* 9 *Paige,* 372; 2 *id.* 103.)

X. The case of a witness disobeying a subpœna, or refusing to testify, is not analogous to this case.

XI. The decision of the committing magistrate that he had jurisdiction of the proceeding instituted before him, and which resulted in the imprisonment complained of, does not preclude an officer before whom the party committed may be brought upon *habeas corpus,* from inquiring into the jurisdiction. (5 *Abb.*, 281; 5 *Hill,* 164.)

(*a.*) Upon *habeas corpus* to inquire into the detention of a person committed for contempt, the officer by whom such writ is issued, may inquire into the jurisdiction of the tribunal by which the prisoner is committed; and also into the form of the commitment. (29 *Barb.*, 622; 7 *Abb..* 96.)

(*b.*) In *Kearney's* case, the question as to whether there was or was not a conviction for a contempt, *was not raised, and was not passed upon by the court.* In that case it was the case of a man and not of a woman.

XII. This being the case of a female, and there being no direct law authorizing or warranting her arrest and imprisonment upon such process: Therefore, we say that she stands in the same light as a person who is privileged from arrest, except in those cases specially provided for by law.

XIII. The amendment of 1867 to section 292 of the Code, viz.: " But in case of an order made by a justice of the supreme court, all subsequent proceedings shall be had before some justice in the judicial district where the judgment debtor resides, to be specified in the order," passed prior to the making of the order of·commitment which is dated the 29th of· June, 1867, with the fact that the relator was and is a resident of the county of Wayne in the 7th judicial district, while the order of com-

mitment is made by a justice of the 5th district—all of which appears on the face of the commitment—shows that Judge MORGAN had no jurisdiction to make the order, and that imprisonment of the relator is, and always has been, unlawful. (*See Commitment, p. 16 of Return.*)

(*a.*) The order of commitment was issued without any notice to the relator. (*See Return*)

(*b.*) The return does not show that any order was ever granted allowing the attachment to issue, after the order to pay over was granted, nor has the relator any notice that there ever was such an order granted. (*See Return.*)

XIV. Where the judgment roll directs the judgment to be paid out of the separate estate of a married woman, an execution against her separate estate is the only process that can be issued against her. (*See Code,* § 287; 42 *Barb., supra.*)

(*a.*) The issuing and return of an execution unsatisfied against the separate estate of a married woman, is evidence that she has no property, and is binding upon the plaintiffs.

(*b.*) This goes to the question of jurisdiction, which can be raised at any time, and upon any and all occasions.

XV. In case the court should determine that the relator is not entitled to her discharge, then we say:

1. A party who is committed as for a contempt for the non-payment of costs or other sum of money, is entitled to the jail liberties. (4 *Paige,* 282 *and* 397 ; 3 *R. S.,* 5*th ed., p.* 850, § 4.)

(*a.*) It is only where a party is committed for a criminal contempt, that he is not entitled to jail liberties. (4 *Paige, supra ;* 2 *id.,* 103.)

(*b.*) The precept issues in a case like the present to enforce payment of the judgment, and not as a punishment.

(*c.*) This is a proceeding on the part of plaintiffs to enforce the execution and collect their judgment; it is not a proceeding on the part of the court to vindicate its power or dignity. (*See Blackstone, supra.*)

The relator therefore claims:

1. That she is entitled to her discharge, and that therefore the order of the county judge be reversed and she be discharged from further custody.

2. That in case the court determines that the relator is not entitled to her discharge, that then the order of the county judge be affirmed.

*By the court,* E. DARWIN SMITH, J. Upon the return to the writ of *habeas corpus,* it appeared that the petitioner Marinda C. Wheeler, was imprisoned in the jail of Wayne county, upon an attachment issued out of this court for the non-compliance by her with an order made in supplemental proceedings, by one of the judges of this court at chambers, requiring her to pay to the relators the amount of a judgment recovered by them against her in this court, amounting to the sum of $723.64, and interest thereon from the 15th day of October, 1866, and $40 costs in such supplemental proceedings. It also appeared upon such return, and by the admission of the parties that the petitioner, for such

writ of *habeas corpus,* was a married woman, and that the said judgment was recovered for goods sold to her, and that the said judgment directed the payment of the same out of her separate property. It also appeared that the order, made in such supplemental proceedings requiring the said petitioner to pay such judgment and costs, within ten days after its date, or in default thereof, that an attachment issue against her, had been appealed from and had been affirmed at a general term of this court in the 5h district (33 *How.,* *p.* 337). The order must, therefore, be denied in this proceeding, and I do'not see why it was not a valid order. It was 'an order for the payment of money, and it was admitted on the return of such *habeas corpus,* that said order directing such payment, was based upon the assumption that the said Marinda C. Wheeler, had means in her possession sufficient to pay said judgment. The attachment was issued under section 4 of title 13, chapter 8, part 3 of the Revised Statutes, entitled " of proceedings for contempts to enforce civil remedies." This section is as follows: "When " any rule or order of a court shall have been made for pay- " ment of costs or any other sum of money, and proof by affi- " davit shall be made of the personal demand of such sum " of money, and of a refusal to pay, the court may issue a " precept to commit the person so disobeying, to prison until " such sum and the costs and expenses of the proceeding be " paid." The section clearly authorizes the issuing of the attachment, under which the petitioner was imprisoned. Such an attachment, however, is a mere substitute for an execution against the body. It is equivalent to a *capias ad satisfaciendum.* It is an execution in a civil action upon which the defendant, if she had been a man, would have been entitled to the jail liberties under section 40, of article 3, chapter 8, part 2 of the Revised Statutes, page 433. This was expressly held by Chancellor WALWORTH, in *Van Wezel* agt. *Van Wezel* (3 *Paige,* 38), and in the *People ex rel. Hawley* agt. *Bennett* (4 *Id.* 282). The order of the

county judge letting the petitioner to bail upon the jail limits was therefore entirely correct, if the defendant could be imprisoned on execution, and must be affirmed. If the order had directed the payment of the judgment out of any particular fund, or directed the doing by the defendant of any particular act or thing to effectuate such payment, then the disobedience of such order would have been a contempt for which, upon a proper conviction by the judge or court, a fine might have been imposed, and upon such fine the defendant, though a married woman, might have been imprisoned as upon criminal process. But here there has been no appearance or hearing before the court or judge, no adjudication that the petitioner was in contempt, and no fine has been imposed upon her, and the attachment is a mere civil process to enforce the payment of money. It is regular as process for that purpose, but if the question were before us we should be obliged to hold, that a female could not be arrested or imprisoned on such process (*Code*, § 179), and the county judge should so have held, and have discharged the petitioner entirely from the said imprisonment. The order of the county judge must therefore be affirmed with costs.